# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL DIVISION |
| | : | |
| | : | **Criminal No. 01-06 ERIE** |
| v. | : | |
| | : | |
| | : | |
| DANIEL J. LEVETO | : | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the Defendant, Daniel J. Leveto, by and through his attorney, Stephen M. Misko, Esquire, and respectfully files the following position with respect to sentencing factors, in accordance with the United States Sentencing Guideline (U.S.S.G.) Manual, 6A1.2:

**PART A.    THE OFFENSE**

**Offense Level Computations**

**Base Offense Level:**

The PSI concludes that the guideline for violation of 26 U.S.C. S 7201 is found in 2T1.1(a), which derives the base offense level from 2T4.1, when the amount of the tax loss is known. It concludes the tax loss to be $408,034, which equates to a base offense level of 17. See Paragraphs 28 – 32 and 39.

The Defendant respectfully objects to the conclusion reached in the PSI that the base offense level is 17. Rather, the Defendant believes and therefore avers that the base offense level is 6, pursuant to 2T1.1(a)(2), for the following reasons. First, the PSI incorrectly asserts that the Defendant violated 26 U.S.C. S 7201 (Attempt to evade or defeat tax), when in actuality he was indicted pursuant to Section 7206 (Fraud and False Statements). To that extent, the Government is asserting a conspiracy between two or more people, wherein the object of the conspiracy is not to evade the payment of income

1

taxes but to make a false or fraudulent statement. Count's 2 and 3 of the Indictment are the substantive counts that support this assertion.

Second, Count 1 of the Indictment is silent as to any monetary loss suffered by the Government. In addition, the Government failed to introduce evidence during its case-in-chief of an exact amount of alleged tax loss and, further, failed to submit any amount of tax loss to the jury in the form of interrogatories for their consideration and verdict. By placing an arbitrary tax loss figure or any amount to arrive at a base offense level, the PSI and Government is abridging the Defendant's Sixth Amendment right to have a jury decide the issues of fact beyond a reasonable doubt. In essence, the punishment would be improperly fixed by the Court via a preponderance of the evidence.

On January 12, 2005, the United States Supreme Court held that the Sixth Amendment as construed in Blakely v. Washington, applies to the federal sentencing guidelines and is violated when a district court imposes a sentence greater than the maximum authorized by the facts found by the jury or admitted by the defendant. See Booker, Opinion of Stevens, J., at 20. The Booker Court reaffirmed the holding of Apprendi: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Booker, Opinion of Stevens, J., at 6, 11, quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Blakely clarified that "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *soley on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" Blakely, 2004 WL 1402697, *4 (emphasis in original). In the second remedial opinion, Justice Breyer declared the Sentencing Guidelines merely advisory. The Booker Court stated clearly that its "holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act-[must apply] to all cases on direct review." Booker, 2005 WL at *26 (Opinion of Breyer, J.). Further, this remedial scheme applies not only to defendants like Booker whose sentences had been imposed in violation of the Sixth Amendment, but also to those defendants like Booker whose sentences had been imposed in violation of the Sixth Amendment, but also to those defendants like Fanfan whose sentences did not. Booker, Opinion of Breyer, J., at 22. After Booker, a district court is required to impose a sentence that is **"sufficient but not greater than necessary"** to accomplish the specific purposes listed under subsection (a)(2) of 18 U.S.C. § 3553. In making that determination, the sentencing court is required to consider seven factors, number four of which is the Guidelines. Booker, Opinion of Breyer, J., at 18, citing 18 U.S.C.A. § 3553(a).

Third, the Defendant also objects as to how the PSI arrived at a tax loss amount. It is uncertain if the profit margin is gross profit before Schedule C expenses or is net income. If it is the former, than the amounts are inflated and do not represent net income to the practice. In either case, are standard or itemized deductions subtracted from the net income figure to arrive at taxable income. Had a civil audit been accomplished, the answers to these questions would be patently obvious and we would not have to guess at approximations. Another avenue to discern tax loss would be to take the Defendant's tax returns from 1984 through 1989 to determine how much tax was paid during those tax

years. An average annual amount multiplied by 9.5 would yield a more accurate amount than that presented in the PSI. Lastly, Paragraph 29 states that 1B1.3, Application Note 9 was utilized as it relates to "the instant offense and evasion of reporting gross income for income tax purposes from 1991 until 2000 . . ." This language is objectionable given that the Defendant was not charged with income tax evasion, but rather making a false or fraudulent statement. In any event, based upon the above analysis, the Defendant believes and therefore avers that if the Court is prone to fix a tax loss the loss would be closer to $300,000.00 and therefore fall within a base offense level of 16.

**Specific Offense Characteristic:**

Paragraph 31 recommends a 2-level increase for sophisticated means to impede discovery of the existence or extent of the offense, pursuant to U.S.S.G. § 2T1.1(b)(2). The basis for this upward departure is that the Defendant created and used fictitious identities, overseas bank accounts, and a multifaceted series of non-existent companies to funnel funds back to himself for his personal use.

The Defendant respectfully objects to this 2-level increase for the following reasons. The Defendant believes and therefore avers that any increase would constitute double counting. Specifically, the use of the same aspect of his conduct for two sentencing purposes (to arrive at a base offense level and to enhance) would produce undue and duplicitous punishment for a single course of conduct.

The Court in United States v. Farrow, 198 F.3d 179, 193 (6th Cir. 1999) held that if a "single aspect of the defendant's conduct both determines his offense level and triggers an enhancement, th[e] defendant's final offense level will be the same as that of a defendant who engages in two forms of conduct deemed punishable under the Sentencing Guidelines. Such an assignment of equal offense levels for conduct of differing severities undermines the Guidelines goal of proportionality in sentencing."

In addition, the Defendant never entered into a course of conduct wherein he attempted to impede the discovery of the transactions between Center Company and the veterinary practice. The transactions were documented on paper and receipts were reported via the correct IRS forms. There was no proof that the identities used were fictitious, and transactions wit foreign banks are legal under the Internal Revenue Code.

Lastly, whether a scheme is sophisticated or not is essentially a question of fact to be determined by a jury beyond a reasonable doubt. See United States v. Hunt, 25 F.3d 1092 (DC Cir. 1994). Since the element of sophisticated means was not decided by a jury, than it is the Defendant's position that any increase in his sentence would be a violation of his Sixth Amendment right, as advanced by the legal analysis as detailed above.

**Adjustment for Obstruction of Justice:**

Paragraph 43 recommends a 2-level increase alleging that the Defendant executed a course of conduct that obstructed and impeded the administration of justice during the investigation and prosecution of the offense, pursuant to U.S.S.G. § 3C1.1. The basis for this upward departure is that the Defendant failed to appear upon the issuance of a summons, which resulted in the issuance of an arrest warrant. In addition, the Defendant remained a fugitive for 27 months before being apprehended. During this time, the Defendant allegedly acquired several forms of identification that were either not in his true name or in a name similar to his.

The Defendant respectfully objects to this 2-level increase for the following reasons. One, the Application Notes do not support an increase under the circumstances described in Paragraph 43. Specifically, Application Note 4(a) provides that providing a false name or identification document at arrest is an example of the type of conduct that, absent a separate count of conviction for such conduct, does <u>not</u> warrant application of this enhancement. The Government does not assert that the conduct resulted in a significant hindrance to the investigation or prosecution, which would be the only way this enhancement could apply. Two, Application Note 4(d) provides that avoiding or fleeing from arrest is also an example of the type of conduct that, absent a separate count of conviction for such conduct, does <u>not</u> warrant application of this enhancement. Again the Government does not assert that the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, which would be the only way this enhancement could apply.

<u>United States v. Gibson, et al.</u>, 409 F.3d 325, 341 (6th Cir. 2005) held that the district court's refusal to apply the obstruction of justice enhancement was proper because Application Note 5 (of the 2002 sentencing guidelines) states that "conduct such as avoiding arrest, providing incomplete or misleading information, or even making false statements to federal officers does not warrant application of the adjustment. Application Note 4, on the other hand, details the type of conduct that is contemplated by the enhancement. The examples provided include threatening a co-defendant, juror, or witness; committing perjury; destroying material evidence; and escaping from custody. This suggests that the adjustment is meant to address more egregious behavior than at issue here."

Likewise, none of the conduct contained with Application Note 3 is averred either in the PSI or by the Government and, as such, the enhancement is not appropriate under the circumstances.

**PART D.     SENTENCING OPTIONS**

**Restitution**

**Statutory Provisions:**

The Defendant concurs with the PSI's conclusion that there are no victims in this offense and therefore restitution is not an issue.  See Paragraph 87. 18 U.S.C.§ 3663(a)(1)(A) provides for when an Order of Restitution is appropriate.  Restitution by statute is limited to offenses under Title 18 (with the exception of when an award would interfere with a forfeiture under Chapters 46 or 96) and certain enumerated offenses in Title 21 relating to the Controlled Substance Act.  Title 26 offenses are not included in this list of offenses, pursuant to § 3663 where direct restitution is appropriate.  In addition, § 3663 (a)(i)(B)(ii) provides that the Court may decline to order restitution when it determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution out weighs the need to provide restitution to any victims.  § 3663 (a)(2) defines "victim" as a person which under common terminology includes individuals and not corporate or government entities.

The Government asserts that the Court may order restitution "so long as payment is made to an identified victim in a definite amount and the amount of restitution is limited by the actual losses of the victim".  The Government's evidence at sentencing will provide the Court with guidance as to their belief of what the appropriate base offense level is; however, the evidence will not sustain an exact tax loss amount that will enable the Court to fashion a restitution order.  The IRS certainly can conduct a civil audit on the questioned tax years to determine a precise tax loss amount, which would be the better means to assess tax loss verses asking the Court to guess at a random number.

The Government concedes that § 3663 (a) (1) does not provide for direct restitution and, therefore, makes a claim under the "discretionary conditions of probation", pursuant to § 3563 (b)(1) – (10).  However § 3563 "conditions of probation" do not apply to the instant offense as the sentencing guidelines provide for a Zone D sentence, which precludes probation as a disposition.  The statute does not provide for restitution in cases where the defendant is given a term of supervised release.  As such, restitution is not appropriate herein.

The Government also errs when it concludes that the amount of loss for purposes of restitution is closely related to the calculation of tax loss used to determine a defendant's base offense level. This position creates an irreconcilable result, as the latter creates a variance of $225,000.00, whereas the former requires an examination of specific records to determine a specific loss.  By concurring with the tax loss computation as set forth on the PSI, the Government is wanting the Court to impose an "approximate" restitution figure, which is statutorily impermissible.

The Defendant has conferred with opposing counsel and the Probation Office in a good faith effort to resolve the disputed matters presented herein.

                              **Respectfully submitted,**

                              <u>**s/Stephen M. Misko**</u>
                              **Stephen M. Misko, Esquire**
                              **Attorney for Daniel J. Leveto**

                              **106 S. Main Street, Suite 704**
                              **Butler, Pennsylvania 16001**
                              **(724) 284-9400**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL DIVISION** |
| | : | |
| | : | **Criminal No. 01-06 ERIE** |
| **v.** | : | |
| | : | |
| | : | |
| **DANIEL J. LEVETO** | : | |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **Defendant's Position With Respect to Sentencing Factors** was served by ECF Electronic Mail and First Class Mail, postage prepaid, on the following parties, on this the 3rd day of October, 2005:

>The Honorable Maurice B. Cohill
>Judges Chambers, Eighth Floor
>U.S. Post Office & Courthouse
>Seventh Avenue & Grant Street
>Pittsburgh, Pennsylvania 15219
>
>Thomas G. Voracek, Esquire
>Rita G. Calvin, Esquire
>United States Department of Justice
>Tax Division/NCES
>601 D Street, N.W.
>Washington, D.C.  20530
>
>David J. Conde
>United States Probation Officer
>17 South Park Row, Room A110
>P.O. Box 1598
>Erie, Pennsylvania  16507-1598

>>**s/Stephen M. Misko**
>>**Stephen M. Misko, Esquire**
>>**Attorney for Daniel J. Leveto**