1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF PENNSYLVANIA

2

_____

3

UNITED STATES OF AMERICA

4
                    Plaintiff

5
          vs.        Criminal Action No. 01-06ERIE

6

DANIEL J. LEVETO

7
                    Defendant

8  _____

9

                 PROCEEDINGS

10
          Transcript of Jury Trial commencing on Thursday,
11  June 2, 2005, United States District Court, Erie,
    Pennsylvania, before Honorable Maurice B. Cohill, Jr.,
12  District Judge.

13  APPEARANCES:

14  For the Government:     For the Department of Justice
                    By:  Rita Calvin, Esq.
15                    By:  Thomas Voracek, Esq.

16  For the Defendant:     Pro Se
                    Stephen Misko, Esq.(Standby)

17
                    Reported by:
18                    Michael D. Powers, RMR
                    Official Court Reporter
19                    Room 5335 USPO & Courthouse
                    Pittsburgh, Pennsylvania 15219
20                    (412) 208-7572

21

22  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.

23

24

25

2

1              I N D E X

2  COURT'S CHARGE - PAGE 3

3  JURY QUESTIONS - PAGE 38

4  JURY QUESTION  - PAGE 44

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          P R O C E E D I N G S

2   (Court reconvened on Thursday, June 2nd, 2005, at 8:35 a.m.)

3          THE COURT:  You said there was a question about the

4   plea letter.  I never saw it yesterday.  It wasn't handed up

5   to me.  So, we will get a copy.

6          MR. VORACEK:  If you go into the Clerk's Office, it

7   may be -- was that docketed with a different number because I

8   think we had to file an information?

9          MS. CALVIN:  It would not be 01-6.

10        MR. WILLIAMS:  (Law Clerk)  If she pled to 01-06,

11   it should be filed under that.

12        MS. CALVIN:  I think --

13        THE COURT:  This can be off the record.

14   (Off the record discussion.)

15   (The jury entered the courtroom.)

16        THE COURT:  Good morning, and thank you for coming

17   in the way you did.  You have been a very prompt jury.

18        Well, ladies and gentlemen, what I am going to do

19   now is give you the charge on the law.  And, you know, these

20   instructions are usually pretty difficult for a person to

21   grasp if they are hearing this kind of thing for the first

22   time.

23        And for that reason -- not many Judges do this, I

24   don't believe -- but, anyway, I believe in the jury having a

25   copy of these.  And I am going to read them and I ask if you

4

1   would just read along with me because I think you're better

2   able to absorb what's in there.  And, of course, when you go

3   to the jury room, you will be able to take these with you for

4   ease in reference.  Please don't read ahead of me.  Just read

5   along with me on this thing.  And I may, once in a while,

6   just divert slightly from the text to enhance an explanation,

7   or something like that.  But, nevertheless, I am going to

8   pretty much stick to this script.

9         Now you have heard all of the evidence to be

10  received in this trial and each of the arguments of counsel

11  and, of course, Dr. Leveto here is representing himself.  So,

12  when I make reference to counsel from time to time in here, I

13  am referring not only to the lawyers for the government but

14  also to Dr. Leveto, who represented himself.

15        All of the instructions given to you by me, those

16  given to you at the beginning of the trial and those given to

17  you during the trial, and these final instructions must guide

18  and govern your deliberations.

19        It is your duty as jurors to follow the law as

20  stated in my instructions and to apply those rules of law to

21  the facts as you find them from the evidence in the case.

22  You will remember right at the very beginning of the trial, I

23  said there are really two judges in any case.

24        I'm sitting up here as the Judge or the referee

25  when it comes to questions of the law, and you folks

5

1 collectively are the judge when it comes to determining the

2 facts.  Your job is to find the facts after I give you my

3 instructions on the law.

4         Counsel here have quite properly referred to some

5 of the governing rules of law in their argument.  But if,

6 however, any differences appear to you between the law as

7 stated by me in these instructions and what the lawyers or

8 Dr. Leveto had to say, you, of course, are to be governed by

9 my instructions.

10        You are not to single out any one instruction alone

11 as stating the law, but you must consider these instructions

12 as a whole.

13        It would be a violation of your sworn duty to base

14 a verdict upon any other view of the law than that given in

15 my instructions, just as it would be a violation of your

16 sworn duty as judges of the facts to base a verdict upon

17 anything but the evidence in this case.

18        You were chosen as jurors in this trial to evaluate

19 all the evidence received and to decide each of the factual

20  questions presented by the allegations brought by the

21  government in the indictment and the plea of not guilty

22  entered by the defendant.

23      In deciding the issues presented to you for your

24  decision in this trial, you must not be persuaded by bias,

25  prejudice, or sympathy for or against any of the parties to

6

1  this case or by any public opinion.

2      Justice through trial by jury must always depend

3  upon the willingness of each individual juror to seek the

4  truth as to the facts from the same evidence presented to all

5  the jurors and to arrive at a verdict by applying the same

6  rules of law as given in the instructions of the Court.

7      I instruct you that you must presume the defendant

8  to be innocent of the crimes charged.  Thus, the defendant,

9  although accused of crimes in the indictment, begins the

10  trial with a clean slate with no evidence against him.  The

11  indictment, as you already know, is not evidence of any kind.

12  The law permits nothing but legal evidence presented before

13  the jury in court to be considered in support of any charge

14  against the defendant.  The presumption of innocence alone,

15  therefore, is sufficient to acquit a defendant.

16      The burden is always upon the government to prove

17  guilt beyond a reasonable doubt.  This burden never shifts to

18  a defendant, for the law never imposes upon a defendant in a

19  criminal case the burden or duty of calling any witnesses or

20  producing any evidence.  The defendant is not even obligated

21  to produce any evidence by cross-examining the witnesses for

22  the government.

23      It is not required that the government prove guilt

24  beyond all possible doubt.  The test is one of reasonable

25  doubt.  A reasonable doubt is a doubt based upon reason and

7

1  common sense, the kind of doubt that would make a reasonable

2  person hesitate to act.  Proof beyond a reasonable doubt

3  must, therefore, be proof of such a convincing character that

4  a reasonable person would not hesitate to rely and act upon

5  it in the most important of his or her own affairs.

6      Unless the government proves beyond a reasonable

7  doubt that the defendant has committed each and every element

8  of the offense charged in the development, you must find the

9   defendant not guilty of the offense.  If the jury views the

10  evidence in the case as reasonably permitting either of two

11  conclusions, one of innocence, the other of guilt, the jury

12  must, of course, adopt the conclusion of innocence.

13         The evidence in the case consists of the sworn

14  testimony of the witnesses, regardless of who may have called

15  them, and all exhibits received in evidence, regardless of

16  who may have produced them.

17         Any proposed testimony or proposed exhibit to which

18  an objection was sustained by me must be entirely

19  disregarded.

20         Anything you may have heard or seen outside the

21  courtroom is not evidence and must be entirely disregarded.

22         Questions, objections, and arguments of counsel are

23  not evidence in the case unless made as a stipulation of

24  fact.

25         You are to base your verdict solely on the evidence

8

1   received in the case.  In your consideration of the received,

2   however, you are not limited to the bald statements of the

3   witnesses or to the bald assertions in the exhibits.  In

4   other words, you are not limited solely to what you see and

5   hear as the witnesses testify or as the exhibits are

6   admitted.  You are permitted to draw from facts which you

7   find have been proved such reasonable inferences as you feel

8   are justified in the light of your experience and common

9   sense.

10      Now, there is an old saying among the lawyers that

11   jurors don't leave their common sense on the courthouse steps

12   when they enter the building.  You are only to consider the

13   evidence that you hear in the courtroom, but you people come

14   from various backgrounds, you are various ages, you have all

15   had different kinds of life experiences, and as a jury then

16   collectively you apply your lifetime experience and common

17   sense in determining just what the facts are in this case.

18      Inferences are simply deductions or conclusions

19   which reason and common sense lead you to draw from the

20   evidence received in the case.  You are permitted to draw

21   such inferences.

22      You as jurors are the sole judges of the

23   credibility of each of the witnesses called to testify in

24   this case and only you determine the importance of the weight

25  that their testimony deserves.  And, of course, by

9

1  credibility, we simply meaning believability.  After making

2  your assessment concerning the credibility of a witness, you

3  may decide to believe all of that witness' testimony, only a

4  portion of it, or none of it.

5        In making your assessment of that witness, you

6  should carefully scrutinize all the testimony given by that

7  witness, the circumstances under which each witness has

8  testified, and all other evidence which tends to show whether

9  a witness, in your opinion, is worthy of belief.  Consider

10  each witness' intelligence, motive to falsify and state of

11  mind, and appearance and demeanor and manner while on the

12  stand.  Consider the witness' ability to observe the matters

13  as to which he or she testified and consider whether he or

14  she impressed you as having an accurate memory or

15  recollection of these matters.  Consider also any relation a

16  witness may bear to either side of the case, the manner in

17  which each witness might be affected by the verdict and the

18  extent to which, if at all, each witness will either be

19  supported or contradicted by other evidence in the case.

20      You should decide whether you believe what each

21  witness to say and how important that testimony was.  In

22  making that decision, I suggest that you further ask yourself

23  a few questions:

24      Did the witness impress you as honest?  Did the

25  witness have a particular reason not to tell the truth?  Did

10

1  the witness have a personal interest in the outcome of the

2  case?  Did the witness seem to have a good memory?  Did the

3  witness appear to understand the questions clearly and answer

4  them directly?  Did the witness' testimony differ from the

5  testimony of other witnesses?

6      Inconsistencies or discrepancies in the testimony

7  of a witness or between the testimony of different witnesses

8  may or may not cause you to disbelieve or discredit such

9  testimony.  Two or more persons witnessing an incident or a

10  transaction may simply see or hear it differently.  Innocent

11  misrecollection, like failure of recollection, is not an

12  uncommon experience.  In weighing the effect of a

13  discrepancy, however, always consider whether it pertains to

14    a matter of importance or an insignificant detail, and

15    whether the discrepancy results from innocent error or

16    intentional falsehood.

17          After making your own judgment or assessment

18    concerning the believability of a witness, you can then

19    attach such importance or weight to that testimony, if any,

20    that you may feel it deserves.  You will then be in a

21    position to decide whether the government has proven the

22    charge beyond a reasonable doubt.

23          The testimony of a single witness, even if not

24    supported by any other evidence, is sufficient to support a

25    conviction.  Again, the weight and the sufficiency of the

11

1    evidence is a matter for you, the jury, to decide.

2          The testimony of a witness may be discredited or,

3    as we sometimes say, impeached by showing that the witness

4    previously made statements which were different than or

5    inconsistent with the witness' testimony here in court.  The

6    earlier inconsistent or contradictory statements are

7    admissible only to discredit or impeach the credibility of

8    the witness and not to establish the truth of these earlier

9  statements made somewhere other than here during the trial.

10  It's within the province of the jury to determine the

11  credibility, if any, to be given the testimony of a witness

12  who has made prior inconsistent or contradictory statements.

13      If a witness has shown to have knowingly testified

14  falsely concerning any important or material matter, you

15  obviously have a right to distrust the testimony of such an

16  individual concerning other matters.  You may reject all of

17  the testimony of that witness or give it such weight or

18  credibility as you may think it deserves.

19      You've heard the testimony of former Internal

20  Revenue Service Special Agents Robert Lapina and Manuel

21  Gonzalez, Internal Revenue Service representative Mary Somma

22  and Internal Revenue Service Agent Kim Iddon.  The fact that

23  a witness may be employed by an agency of the federal

24  government does not mean that his or her testimony is

25  deserving of more or less consideration or greater or lesser

12

1  weight than that of an ordinary witness.

2      At the same time, it's quite legitimate for the

3  defense to attack the credibility of an Internal Revenue

4  Service agent witness on the grounds that his or her

5  testimony may be colored by a personal or professional

6  interest in the outcome of the case.

7      It will be your decision, after reviewing all the

8  evidence, whether to accept the testimony of each Internal

9  Revenue Service agent witness and to give to that testimony

10  whatever weight, if any, you find it deserves.

11      You should judge the testimony of Daniel Leveto in

12  the same manner as you judge the testimony of any other

13  witness in this case.

14      Your decision on the facts of this case should not

15  be determined by the number of witnesses testifying for or

16  against a party.  You should consider all the facts and

17  circumstances in evidence to determine which of the witnesses

18  you choose to believe or not believe.  You may find that the

19  testimony of a smaller number of witnesses on one side is

20  more credible than the testimony of a greater number of

21  witnesses on the other side.

22      Testimony of a single, uncorroborated witness is

23  sufficient to support a conviction.  And I remind you that

24  you, the jury, are the sole judges of the credibility of each

25  witness.


13


1       There is nothing particularly different in the way

2   that a juror should consider the evidence in the trial from

3   that in which any reasonable and careful person would treat

4   any other important question that must be resolved by

5   examining facts, opinions and evidence.  You are expected to

6   use your good sense in considering and evaluating the

7   evidence in the case for only those purposes for which it's

8   been received and to give such evidence a reasonable and fair

9   construction in the light of your common knowledge of the

10   natural tendencies and inclinations of human beings.

11       If the defendant be proved guilty beyond a

12   reasonable doubt, say so.  If not proved guilty beyond a

13   reasonable doubt, say so.

14         Keep constantly in mind that it would be a

15   violation of your sworn duty to base a verdict of guilty upon

16   anything other than the evidence received in the case and the

17   instructions of the Court.  Remember as well that the law

18   never imposes upon a defendant in a criminal case the burden

19   or duty of calling any witnesses or producing any evidence

20   because the burden of proving guilt beyond a reasonable doubt

21   is always assumed by the government.

22        Remember also that the question before you never

23   can be, will the government win or lose the case?  The

24   government always wins when justice is done, regardless of

25   whether the verdict be guilty or not guilty.

14

1        Now, there are two types of evidence from which you

2   may find the truth as to the facts of the case, direct

3   evidence and circumstantial evidence.

4        Direct evidence is the testimony of a person who

5   asserts or claims to have actual knowledge of a fact, such as

6   an eyewitness.

7        Circumstantial evidence is proof of a chain of

8   facts and circumstances indicating the existence of a fact.

9        And let me give you a little, simple example of

10   what I am talking about there.  Sometimes you see on TV or in

11   the movies, somebody will say, oh, that is circumstantial

12   evidence.  That's no good.  Well, that's an incorrect

13   statement of the law, at least as far as the federal law is

14  concerned.  Circumstantial evidence is admissible and may be

15  considered by a jury.  And what do we mean by that?

16      Well, let's say that your house looks out on your

17  back yard, and you are getting ready to go to bed one

18  winter's night, and it is cold out, but there hadn't been any

19  snow.  And you look out the bedroom window and you see a

20  rabbit sitting in the back yard.

21      And the next day if somebody says, was there a

22  rabbit in your back yard?  You can say, yeah, you saw it.  I

23  was an eyewitness.

24      The next morning, you wake up in the morning and

25  the first thing you notice is, during the night, it snowed.

15

1  And then you see across that new-fallen snow some tracks, and

2  you know rabbit tracks when you see them.  Well, you didn't

3  see the rabbit, but you saw the tracks.  And that day if

4  somebody said, was there a rabbit in your yard last night?

5  You could say, yeah, there was.  I didn't see the rabbit, but

6  I saw his tracks, and that is circumstantial evidence that

7  the rabbit was there.

8          So, that's what we are talking about, that

9   distinction.

10          As I said, the law makes absolutely no distinction

11   between the weight or value to be given to either direct or

12   circumstantial evidence.  Nor is a greater degree of

13   certainty required of circumstantial evidence than of direct

14   evidence.  You should weigh all the evidence in the case.

15   After weighing all the evidence, if you are not convinced of

16   the guilt of the defendant beyond a reasonable doubt, you

17   must find the defendant not guilty.

18          You should analyze all of the testimony and

19   harmonize as much of it as you can; that is, fit it together.

20   If there are conflicts in the testimony that cannot be

21   resolved by harmonizing them, then you must determine which

22   evidence is factual and which is not.  You must use your best

23   efforts and your own notes to recall the testimony.

24          The defendant is not on trial for any act or any

25   conduct not specifically charged in the indictment.


16


1          The indictment charges that the offenses alleged

2   were committed in or around and on or about certain dates.

3          Although it's necessary for the government to prove

4    beyond a reasonable doubt that the offense was committed on a

5    date reasonably near the dates alleged in the indictment,

6    it's not necessary for the government to prove that an

7    offense was committed precisely on the date charged.

8          Now, if you were going to diagram my instructions

9    here, they would break down into three parts.  The first part

10   is what I just read, and that is pretty much the instruction

11   I give in every criminal case because those principles of law

12   were general principles and they apply to just about any kind

13   of a criminal case where criminal charges are brought.

14          Now, part two of the lecture this morning is going

15   to be about the law that applies to the particular charges

16   contained in this case.

17          And then part three will be just short suggestions

18   about how you might go about your business of considering the

19   evidence in the case.  So, let's look at page eleven now.

20          You have been provided, or you will be provided

21   with a copy of the indictment in this case.

22          And an indictment is but a formal method of

23   accusing a defendant of a crime.  It's not evidence of any

24  kind against the defendant.  The defendant, Daniel Leveto,

25  pled not guilty to the indictment and, therefore, denies that

17

1  he's guilty of the charges.

2       Now Count 1.  This is the nature of the offense

3  charged.

4       Count 1 of the indictment charges that from in and

5  around August of 1991 until on or about May 23rd, 1997, in

6  the Western District of Pennsylvania and elsewhere, the

7  defendant, Daniel Leveto, came to some type of agreement or

8  understanding with other individuals to commit an offense

9  against the United States; namely, to defraud the United

10  States for the purpose of impeding and impairing the lawful

11  government functions of the Internal Revenue Service of the

12  Treasury Department in the ascertainment, computation,

13  assessment, and collection of income taxes, and that one of

14  its members -- that is, one of the conspiracy members --

15  thereafter committed one or more of the overt acts set out at

16  paragraphs 32 through 105 of the indictment, for the purpose

17  of achieving the goal of the alleged conspiracy or agreement

18  or understanding.

19          Now, the actual statute that he's charged with

20   violating and being part of a conspiracy is this:

21          Section 371 of Title 18 of the United States Code

22   provides that, quote, if two or more persons conspire to

23   commit any offenses against the United States, or to defraud

24   the United States, or any agency thereof, and one or more of

25   such persons do any act to effect the object of the

18

1   conspiracy an offense against the United States has been

2   committed.

3          And I instruct you that the United States

4   Department of Treasury is a department or agency of the

5   United States.

6          Now, in any criminal case, the government must

7   prove what are called the essential elements of the

8   particular crime charged.  In order to sustain its burden of

9   proof to the crime of conspiracy to defraud the United States

10   as charged in Count 1 of the indictment, the government must

11   prove the following three essential elements beyond a

12   reasonable doubt:

13          One.  The conspiracy, agreement or understanding to

14    defraud the United States as described in the indictment was

15    formed, reached, or entered into by two or more persons.

16          Second.  At some time during the existence or life

17    of the conspiracy, agreement, or understanding, Daniel Leveto

18    knew the purpose of the agreement, and with that knowledge,

19    then deliberately joined the conspiracy, agreement or

20    understanding.

21          And, three.  At some time during the existence or

22    life of the conspiracy, one of its alleged members knowingly

23    performed one of the overt acts charged in paragraphs 32

24    through an 105 of the indictment, and did so in order to

25    further or advance the purpose of the agreement.


19


1          Now, the term knowingly, as used in these

2    instructions and in the law to describe the alleged state of

3    mind of the defendant, Daniel Leveto, means that he was

4    conscious and aware of his actions, realized what he was

5    doing or what was happening around him, and did not act

6    because of ignorance, mistake or accident.

7          The intent of a person or the knowledge that a

8   person possesses at any given type may not ordinarily be

9   proved directly because there is no way of directly

10   scrutinizing the workings of the human mind.  In determining

11   the issue of what a person knew or what a person intended at

12   a particular time, you may consider any statements made or

13   acts done by that person and all other facts and

14   circumstances received in evidence which may aid in your

15   determination of that person's knowledge or intent.

16        You may infer, but you are certainly not required

17   to infer, that a person intends the natural and probable

18   consequences of acts knowingly done or knowingly omitted.

19   It's entirely up to you, however, to decide what facts to

20   find from the evidence received during this trial.

21        Now, what is a conspiracy in the law?  Well, a

22   criminal conspiracy is an agreement or a mutual understanding

23   knowingly made or knowingly entered into by at least two

24   people to violate the law by some joint or common plan or

25   course of action.  A conspiracy is, in a very true sense, a

20

1   partnership in crime.

2          A conspiracy or agreement to violate the law, like

3    any other kind of agreement or understanding, need not be

4    formal, written, or even expressed directly in every detail.

5          The government must prove that the defendant,

6    Daniel Leveto, and at least one other person knowingly and

7    deliberately arrived at an agreement or understanding that

8    they, and perhaps others, would defraud the United States by

9    means of some common plan or course of action as alleged in

10   Count 1 of the indictment.  It is proof of this conscious

11   understanding and deliberate agreement by the alleged members

12   that should be central to your consideration of the charge of

13   conspiracy.

14          To prove the existence of a conspiracy or an

15   illegal agreement, the government is not required to produce

16   a written contract between the parties or even produce

17   evidence of an expressed oral agreement spelling out all of

18   the details of the understanding.  To prove that a conspiracy

19   existed, moreover, the government is not required to show

20   that all the people named in the indictment as members of the

21   conspiracy were, in fact, parties to the agreement, or that

22   all of the members of the alleged conspiracy were named or

23   charged, or that all of the people whom the evidence shows

24  were actually members of the conspiracy agreed to all the

25  means or methods set out in the indictment.

21

1       An agreement can be proved indirectly by facts and

2  circumstances which lead to a conclusion that an agreement

3  existed.  But, it is up to the government to convince you

4  that such facts and circumstances existed in this particular

5  case.

6       Unless the government proved beyond a reasonable

7  doubt that a conspiracy, as just explained, actually existed,

8  then you must acquit defendant Daniel Leveto.

9       Before you the jury may find that defendant

10  Daniel Leveto, or any other person, became a member of the

11  conspiracy charged in Count 1 of the indictment, the evidence

12  in the case must show beyond a reasonable doubt that

13  Daniel Leveto knew the purpose or goal of the agreement or

14  understanding and deliberately entered into the agreement

15  intending, in some way, to accomplish the goal or purpose of

16  this common plan or joint action.

17       Merely associating with others and discussing

18   common goals, mere similarity of conduct between or among

19   such persons, merely being present at the place where a crime

20   takes place or is discussed, or even knowing about criminal

21   conduct does not, of itself, make someone a member of the

22   conspiracy or a conspirator.

23        In order to sustain its burden of proof under

24   Count 1 of the indictment, the government must prove beyond a

25   reasonable doubt that one of the members of the alleged

22

1   conspiracy or agreement knowingly performed at least one

2   overt act and that this overt act was performed during the

3   existence or life of the conspiracy and was done to somehow

4   further the goal of the conspiracy or agreement.

5        The term overt act means some type of outward,

6   objective action performed by one of the parties to or one of

7   the members of the conspiracy, for the purpose of advancing

8   or helping the conspiracy.

9        Now, Count 1 of the indictment lists 74 overt acts

10   in paragraphs 32 through 105.  Although you must unanimously

11   agree that the same overt act was committed, the government

12   is not required to prove more than one of the overt acts

13  charged.

14      The overt act may, but for the alleged illegal

15  agreement, appear totally innocent and legal.  But, the

16  government must prove that at least ones of these acts was

17  committed by a member of the conspiracy, and that it was

18  committed for the purpose of advancing or helping the

19  conspiracy.  This is essential.

20      Now, some of the people who may have been involved

21  in these events are not on trial.  This does not matter.

22  There is no requirement that all members of a conspiracy be

23  charged and prosecuted or tried in one proceeding.

24      The testimony must prove that there was an unlawful

25  object to the conspiracy.  It's not a defense to the

23

1  conspiracy charge that the defendant may also have had legal

2  objectives if he had an illegal objective.

3      A conspiracy may have several objectives, but if

4  any one of them is to defraud the United States, then the

5  conspiracy is unlawful.

6      In determining a defendant's intent, you may take

7    into consideration any evidence you find of any conduct which

8    would be likely to mislead or conceal, such as the

9    concealment of facts.

10        One last point about conspiracy.  It is no defense

11    to a conspiracy charge that success was impossible because of

12    circumstances that the defendants did not know about.  This

13    means that you may find the defendant guilty of conspiracy

14    even if it was impossible to successfully complete the crimes

15    that they agreed to commit.

16        That is the end of the discussion on conspiracy.

17        Counts 2 and 3 of the indictment are basically the

18    same, but they are for different years.

19        Count 2 of the indictment charges that on or about

20    April 15th, 1995 -- of course, April 15th is any year when

21    your taxes are due and your return is due.

22        Count 2 of the indictment charges that on or about

23    April 15th, 1995, the defendant Daniel Leveto willfully made

24    and signed a joint tax return for the calendar year 1994,

25    which he did not believe to be true and correct as to every

24

1    material matter and which contained or was verified by a

2    written declaration that it was made under the penalty of

3    perjury.

4         Count 3 of the indictment charges that on or about

5    April 15th, 1996, defendant Daniel Leveto willfully made and

6    signed a joint tax return for the calendar year 1995, which

7    he did not believe to be true and correct as to every

8    material matter and which contained or was verified by a

9    written declaration that it was made under the penalty of

10   perjury.

11        Now, the following instructions on the law apply to

12   Count 2 and Count 3, as they charge violations of the same

13   statute for different years.  However, as you can see on the

14   verdict form, you will render a separate verdict on Count 2

15   and Count 3.

16        Now, the statute that he's charged with violating

17   there says this:

18        Section 7206(1) Title 26 of the United States Code.

19        Quote:  Any person who willfully makes and

20   subscribes any return, statement or other document, which

21   contains or is verified by a written declaration that it is

22   made under the penalties of perjury, and which he does not

23   believe to be true and correct as to every material matter

24   shall be guilty of an offense against the United States.

25          Now, on these charges, in order to sustain its

25

1   burden of proof for the crime of willfully filing a false

2   Joint Federal Income Tax Return as charged in Counts 2 and 3

3   of the indictment, the government must prove the following

4   five essential elements beyond a reasonable doubt:

5          One.  Defendant Daniel Leveto made and signed a tax

6   return that contained false information as to a material

7   matter as detailed in the indictment.

8          Two.  Defendant Daniel Leveto knew that this

9   information was false.

10          Three.  The false statement was material.

11          Four.  The return contained a written declaration

12   that it was being signed subject to the penalties of perjury.

13          And, five.  In filing the false tax return,

14   defendant Daniel Leveto acted willfully.

15          Now, I instruct you that United States Joint

16   Individual Income Tax Returns, Form 1040, are documents as

17   contemplated by Section 7206(1) of the Internal Revenue Code.

18          An income tax return is made when it's filed with

19   the Internal Revenue Service.  It's subscribed when it is

20   signed by the taxpayer, or when he authorizes another to sign

21   his name for him.

22          A statement or representation is false if it was

23   untrue when made and was then known to be untrue by the

24   person making it or made with reckless indifference as to its

25   truth or falsity.

26

1          A statement, claim or document is fraudulent if it

2   was falsely made, or made with reckless indifference as to

3   its truth or falsity, and made or caused to be made with an

4   intent to deceive.

5          The indictment charges that Daniel Leveto filed a

6   false tax return for the years 1994 and 1995 in that he

7   failed to disclose and omitted gross receipts from a business

8   activity, as he then and there well knew and believed, he was

9   required to disclose the gross receipts from the business

10   activity on his tax return and he failed to disclose that he

11   had an interest in or a signature or other authority over a

12  financial account in a foreign country, whereas he then and

13  there well knew and believed, that he had an interest in or a

14  signature or other authority over a financial account in a

15  foreign country.

16       A tax return that omits material items necessary to

17  the computation of income is not true and correct within the

18  meaning of the statute.  True and correct means more than

19  that no false figures have been used and that the arithmetic

20  is accurate.  The two terms, true and accurate, mean that the

21  document described is both accurate and complete.  It's not

22  necessary for the government to prove that the defendant

23  intended to evade taxes.

24       Thus, if you find that Daniel Leveto omitted or

25  failed to disclose gross receipts from a business activity,


                              27


1  you may find that he filed a false income tax return.

2       The indictment also charges that the defendant

3  filed a false tax return for the years 1994 and 1995 in that

4  he failed to disclose that he had an interest in or a

5  signature or other authority over a financial account in a

6  foreign country, whereas he then and there well knew and

7  believed, that he had an interest in or a signature or other

8  authority over a financial account in a foreign country.

9         Thus, if you find that Daniel Leveto failed to

10  disclose that he had an interest in or a signature or other

11  authority over a financial account in a foreign country, you

12  may find that he filed a false income tax return.

13         Section 6064 of the Internal Revenue Code provides

14  that:

15         The fact that an individual's name is signed to a

16  return shall be prima facie evidence for all purposes that

17  the return was actually signed by him.

18         In other words, you may infer and find that a tax

19  return was, in fact, signed by the person whose name appears

20  to be signed to it.  You are not required, however, to accept

21  any such inference or to make any such finding.

22         If you find beyond a reasonable doubt from the

23  evidence in the case that the defendant, Daniel Leveto,

24  signed the tax returns in question, then you may also draw

25  the inference and you may also find, but are not required to

28

1    find, that Daniel Leveto knew of the contents of the return

2    that he signed.

3        In general, a false statement is material if it is

4    one that has a natural tendency to influence or is capable of

5    influencing the decision-making body to which it addressed or

6    impede the Internal Revenue Service in determining the

7    correctness of the tax return.  It's not necessary for the

8    Internal Revenue Service to have actually relied on the false

9    statement.

10        To find a defendant guilty of violating

11    Section 7206(1), you must not only find that he filed an

12    income tax return which was false as to a material matter,

13    but you must also find that the defendant did so willfully.

14        The word willfully, as used in this statute, means

15    a voluntary, intentional violation of a known legal duty.  In

16    other words, the defendant must have acted voluntarily and

17    intentionally and with the specific intent to do something he

18    knew the law prohibited, that is to say, with intent either

19    to disobey or to disregard the law.

20        A defendant does not act willfully if he believes

21    in good faith that he's acting within the law or that his

22    actions comply with the law.  This is so even if the

23   defendant's belief was not reasonable as long as he held the

24   belief in good faith.

25          In determining the issue of willfulness, you are

29

1   entitled to consider anything done or omitted to be done by

2   the defendant and all facts and circumstances in evidence

3   that may aid in the determination of his state of mind.  It's

4   obviously impossible to ascertain or prove directly the

5   operations of the defendant's mind, but a careful and

6   intelligent consideration of the facts and circumstances

7   shown by the evidence in any case may enable one to infer

8   what another's intentions were in doing or not doing things.

9   With the knowledge of definite acts, we may draw definite

10   logical conclusions.

11          The reasonableness of a belief is a factor for the

12   jury to consider in determining whether the defendant

13   actually held a belief and acted upon it.  The more

14   far-fetched the belief is, the less likely it is that a

15   person actually held or would act on that belief.

16          If a person acts without reasonable grounds for the

17  belief that his conduct is lawful, it is for the jury to

18  determine whether that person has willfully violated the law.

19  A defendant who knows what the law is and who disagrees with

20  it does not have a good faith misunderstanding defense.

21  Neither a defendant's disagreement with the law nor his

22  personal belief that such a law is unconstitutional, no

23  matter how earnestly he holds those views, can constitute the

24  defense of good faith misunderstanding or mistake.  It's the

25  duty of all citizens to obey the law whether they degree with

30

1  it or not.

2       We are, in our daily affairs, continuously called

3  upon to decide from the acts of others what their intentions

4  or purposes are, and experience has taught us that frequently

5  actions speak more clearly than spoken or written words.  To

6  this extent, you must rely in part on circumstantial evidence

7  in determining the guilt or innocence of the defendant.

8       And in this regard, there are certain matters that

9  you may consider as pointing to willfulness, if you find such

10  matters to exist in this case.  By way of illustration only,

11  willfulness may be inferred from conduct such as concealment

12  of assets or covering up sources of income, handling one's

13  affairs to avoid making the records usual in transactions of

14  this kind, and any conduct the likely effect of which would

15  be to mislead or to conceal.

16      I give you these instances simply to illustrate the

17  type of conduct you may consider in determining the issue of

18  willfulness.  I do not by this instruction mean to imply that

19  the defendant did engage in any such conduct.  It's for you

20  as the trier of the facts to make this determination as to

21  whether the defendant did or did not.

22      Now, the summaries and charts -- these are the

23  charts you saw towards the end of the case -- the summaries

24  and charts prepared by the United States were presented at

25  trial for the purpose of explaining facts disclosed by other

31

1  documentation which is in evidence in this case.  Such

2  summaries or charts are not, in and of themselves, evidence

3  or proof of any facts.  These summaries and charts are not

4  better than the testimony and documents on which they were

5  based.  You're to give no greater consideration to these

6    summaries and charts than you would give to the evidence upon

7    which they are based.

8         It is for you to decide whether the summaries and

9    charts correctly present the data and information contained

10   in the testimony and the exhibits upon which they are based.

11   You are entitled to consider the summaries and charts if you

12   find that they are of assistance to you in analyzing and

13   understanding the evidence.

14        The government may prove that defendant Daniel

15   Leveto acted knowingly by proving beyond a reasonable doubt

16   that this defendant deliberately closed his eyes to what

17   would otherwise have been obvious to him.  No one can avoid

18   responsibility for a crime by deliberately ignoring what is

19   obvious.  A finding beyond a reasonable doubt of an intent of

20   defendant Daniel Leveto to avoid knowledge or enlightenment

21   would permit the jury to find knowledge.  Stated another way,

22   a person's knowledge of a particular fact may be shown from a

23   deliberate or intentional ignorance or deliberate or

24   intentional blindness to the existence of that fact.

25        It is, of course, up to you as to whether you find

32

1    any deliberate ignorance or deliberate closing of the eyes

2    and any inferences to be drawn from any such evidence.

3        You may not conclude that defendant Daniel Leveto

4    had knowledge, however, from proof of a mistake, negligence,

5    carelessness, or a belief in an inaccurate proposition.

6        There is a distinction between civil liability for

7    the payment of taxes and criminal liability.  This is a

8    criminal case.  The defendant is charged with the commission

9    of a crime, and the fact that there may be civil tax

10   consequences for his conduct may not be considered by the

11   jury in determining the issues in this case.

12       Now, that concludes my instructions to you on the

13   law as it pertains to the charges contained in this

14   indictment.  Let me just give you a few suggestions for

15   organizing yourselves here.

16       Upon retiring to the jury room, you will select one

17   of you to act as your foreperson, and the foreperson will

18   preside over your deliberations and will be your spokesman

19   here in court.  You may want to select a secretary also.

20       Your verdict must represent the collective judgment

21   of the jury.  In order to return a verdict, it's necessary

22  that each juror agree thereto.  Your verdict must be

23  unanimous.

24          It is your duty as jurors to consult with one

25  another and to deliberate with a view to reaching an

33

1  agreement, if you can do so without violence to individual

2  judgment.  Each of you must decide the case for yourself, but

3  do so only after an impartial consideration of the evidence

4  in the case with your fellow jurors.  In the course of your

5  deliberations, do not hesitate to re-examine your own views

6  and change your opinion, if convinced that it is erroneous.

7  But, do not surrender your honest conviction as to the weight

8  or effect of evidence simply because of the opinion of your

9  fellow jurors, or for the mere purpose of returning a

10  verdict.

11          Remember at all times, you are not partisans.  You

12  are judges, judges of the facts of this case.  Your sole

13  interest is to seek the truth from the evidence received

14  during the trial.

15          Your verdict must be based solely upon the evidence

16  received in the case.  Nothing you seen or read outside the

17  of the courtroom may be considered.  Nothing I have said or

18  done during the course of this trial is intended in any way

19  to somehow suggest to you what I think your verdict should

20  be.  Nothing said in these instructions or nothing in any

21  form of verdict prepared for your convenience is to suggest

22  or to convey to you in any way or manner any intimation as to

23  what verdict I think you should return.  What the verdict

24  shall be is the exclusive duty and responsibility of the

25  jury.  As I have told you many times, you are the sole judges

34

1  of the facts.

2       The punishment provided by law for the offense

3  charged in the indictment is a matter exclusively within the

4  province of the Court and should never be considered by you

5  in any way in arriving at an impartial verdict as to the

6  offense charged.

7       And you'll receive a form of verdict sheet here and

8  I will go over that with you right now.  Do you have that

9  there?

10       You'll each get a copy of the verdict sheet, but

11   the one in the blue back is the one that, once you have

12   reached a verdict, that's the one you should sign.  Again,

13   you will each have a copy.

14       Do they have one in front of you?  You don't have

15   one now?  Okay.

16       Well, it's really pretty simple.  It simply states:

17   Count 1, and then you mark guilty or not guilty.  Just put an

18   x in the blank.  Same for Count 2.  Same for Count 3.

19       And then, after you've reached your verdict, then

20   the foreperson will insert the date and sign it, and then the

21   rest of you will all sign it also.

22       So, as I said, you take this form to the jury room

23   and when you've reached your unanimous verdict, you'll have

24   your foreperson write your verdict, date and sign the form,

25   then you'll each sign the form and return it with your

35

1   verdict to the courtroom.

2       If it becomes necessary during your deliberations

3   to communicate with the Court, you may send a note signed by

4   your foreperson, or by one or more members of the jury,

5   through the bailiff.

6          And in a minute, Richard is going to magically

7    become a bailiff.  He will take an oath and he will become a

8    bailiff.

9          No member of the jury should ever attempt to

10   communicate with the Court by any means other than a signed

11   writing, and the Court will never communicate with any member

12   of the jury on any subject touching the merits of the case

13   other than in writing or orally here in open court.

14          And you will note from the oath about to be taken

15   by Richard, the bailiff, that he, too, as well as other

16   persons, is forbidden to communicate in any way or manner

17   with any member of the jury on any subject touching on the

18   merits of the case.

19          Bear in mind also that you are never to reveal to

20   any person -- not even to the Court -- how the jury stands

21   numerically or otherwise on the question of the guilt or

22   innocence of the accused until after you have reached a

23   unanimous verdict.

24          Now, may I see the lawyers and Dr. Leveto at

25   sidebar.

36

1   (Sidebar discussion.)

2        THE COURT:  Mr. Voracek, have I omitted or

3   misstated anything in the instructions?

4        MR. VORACEK:  No, Your Honor.

5        THE COURT:  Ms. Calvin?

6        MS. CALVIN:  No, Your Honor.

7        THE COURT:  Mr. Leveto?

8        MR. LEVETO:  No, Your Honor.

9        THE COURT:  Okay.

10  (End of sidebar.)

11       THE COURT:  The clerk will swear the bailiff.

12  (The bailiff was sworn in.)

13       THE COURT:  Well, as the jury is about to retire, I

14  want to say something to our alternate jurors, Susan Guianen

15  and Robert Nahay.  You served well.  This whole jury has been

16  very prompt and attentive.  I think, and I know that you,

17  too, would make very fine jurors, but the law does require

18  that only twelve people go to the jury room to deliberate.

19       So, I am going to excuse you at this point with my

20  thanks and the thanks of all the lawyers in the case, all the

21  parties in the case.

22          Now, ladies and gentlemen, I am about to direct

23   that you do be taken to the jury room for deliberations on

24   the verdict which you are going to be required to render.

25   Take up the case carefully, for it's an important case to

37

1   both the defendant and the government.  Give each item

2   careful consideration and arrive at a proper verdict.  Have

3   your foreperson record the verdict slip as to each count on

4   the verdict slip, return the verdict slip to us at the

5   appropriate time, and your verdict will then be announced in

6   open court.

7          Your verdict should be one which you feel justice

8   dictates after calm and deliberate consideration of all the

9   evidence.  Do not be hasty or impetuous, but be true to the

10   oath that you have taken.

11          With that, we will excuse you.  I'll have the

12   parties go over the exhibits, then they will be brought up to

13   you.

14   (The jury left the courtroom.)

15          THE COURT:  I take it no one has any objection to

16  the government having an exhibit list by numbers with no

17  additional comments on it?

18        MR. WILLIAMS:   (Law Clerk) In which we'll include

19  the Defendant's Exhibits.

20        MR. VORACEK:  Yes.  At the very end, we will

21  include A, B, C with just a brief description of the exhibits

22  as reflected in the jury list.

23        MR. WILLIAMS:   (Law Clerk) Before it goes in,

24  have them look at it.

25        MR. VORACEK:  Absolutely.  We just need to add


                                38


1  those three on the list and then we'll print it.

2        THE COURT:  Do they have this one about the travel

3  stuff?

4        MR. VORACEK:  Yes, we've checked.  It's in there.

5        THE COURT:  All right.

6  (Court recessed at 9:30 a.m.)

7  (Court reconvened at 11:30 a.m. in chambers.)

8        THE COURT:  Okay.  We have three questions.

9        For the record, question number one says, Ref

10  period -- I guess that means refer -- to exhibit that looks

11  like 6A. Does the government have a Center Company Form 1040

12  NMF for periods prior to December, 1991? For instance, the

13  1990 1040 NMF form?

14       And I assume that that was not introduced. I mean,

15  do you know if it's there, or was there one?

16       MR. VORACEK: Well, Your Honor, that was not in the

17  exhibits that were admitted into evidence. The very first

18  one, the NMF form that we submitted was the one for 1991,

19  which is found at 6A.

20       THE COURT: You can't tell them more than what

21  happened during the trial. So, do you have any comment on

22  that?

23       MR. LEVETO: I agree.

24       THE COURT: I think we just say that a 1990 form

25  for Center Company was not admitted into evidence. That

39

1  would be the answer.

2       What I usually do is just -- I write -- give them a

3  written response rather than having them troop into the

4  courtroom, unless there is something that really needs some

5    explaining to be done.

6        MR. WILLIAMS:  (Law Clerk)  1990 form for Center

7    Company was not admitted into evidence?  That's what you want

8    to say?

9        THE COURT:  A.  I wouldn't say the.  A 1990.

10        MR. WILLIAMS:   (Law Clerk)  A 1990.

11        THE COURT:  NMF.

12        MR. WILLIAMS:  (Law Clerk) 1040 NMF.

13        MR. LEVETO:  What's NMF?

14        MS. CALVIN:  Non-master file.

15        THE COURT:  Well, his question is:  Does the

16    government -- does the government have a form, and then he

17    says, for instance.

18        I would say the only -- I would say this:  No other

19    forms were -- no other 1040 NMF forms were admitted into

20    evidence, other than those --

21        MR. MISKO:  Contained within -- Other than those

22    contained in the exhibit list.

23        THE COURT:  Other than those contained in the

24    exhibit list.  That's good.  Okay.

25        They obviously have some frustrations on this one.

1    They say:  In this mass of documents, is there anything that

2    shows the actual sales transaction of the bus. -- I guess

3    they mean business -- goodwill for Dr. Leveto to Center Corp.

4    or to Jack Williams?

5        MR. VORACEK:  Your Honor, the sales agreement was

6    exhibited at No. 92.

7        MR. LEVETO:  92, that's correct.

8        THE COURT:  Does that have a goodwill item in it?

9        MR. LEVETO:  It explains most everything and it has

10   signatures, and it's pretty much the --

11        THE COURT:  Well, we'll just say -- I guess the

12   answer to that question is -- we want to write the question

13   each time and then our answer.

14        MR. WILLIAMS:   (Law Clerk)  Yes.

15        THE COURT:  And this one then, see Exhibit 92.

16        MR. VORACEK:  Yes, sir.

17        MR. LEVETO:  Yes.

18        THE COURT:  Okay.  Next.  Miss Iddon read the

19   instructions on offshore account limitations.  Do not believe

20   that document was submitted into evidence.  Can we get a copy

21  of or a re-reading of the exact text?

22        I don't know what they are talking about.

23        MR. MISKO:  She read verbatim from an IRS form.  Am

24  I correct on that?

25        MR. VORACEK:  She refreshed her recollection by


                                41


1  looking at the instructions for that section regarding

2  foreign accounts.

3        MR. LEVETO:  And we had '94 and '95 in the

4  explanation offering it.  It was a very nice instruction not

5  just off of the Schedule B.  She had those nice instructions.

6  Mine is back at the prison, but I don't think it was admitted

7  into evidence, if I'm correct.

8        MR. MISKO:  Judge, if I could suggest maybe get

9  that part of the testimony from Mr. Powers and just read it

10  back to them.

11        THE COURT:  Boy, I really hate to get into

12  re-reading testimony because that becomes epidemic sometime.

13        MR. LEVETO:  Not only that, but there was a lot of

14  that form that would be germane for them to see.

15        MR. MISKO:  But, it is not admitted.

16          THE COURT:  I would just say, the instructions

17    referred to in this question -- because they will have the

18    question -- the instructions referred to in this question

19    were not admitted into evidence and are, therefore,

20    unavailable.

21          MR. WILLIAMS:   (Law Clerk)  Do you want to put in

22    a reminder that you're to rely on your memory, or something

23    like that?

24          THE COURT:  Yes.  You must rely on your memory, on

25    your collective memories and notes.


                              42


1           MR. WILLIAMS:   (Law Clerk)  Or is that just

2     extra --

3           THE COURT:  Maybe that's gilding the lily.  I'd

4     leave the reminder off.  Just answer the question.

5           MR. WILLIAMS:   (Law Clerk)  Okay.

6           THE COURT:  Why don't you read back our answers

7     you.  Now, I will read the question, you read the answer.

8     Okay.

9           Refer to Exhibit 6A.  Does the government have a

10   Center Company form 1040 NMF for periods prior to December,

11   1991?  For instance, the 1990 1040 NMF form?

12          MR. WILLIAMS:  (Law Clerk)  Answer:  No other 1040

13   NMF forms were admitted into evidence other than those

14   contained in the exhibit list.

15          THE COURT:  Next question is:  In this mass of

16   documents, is there anything that shows the actual sales

17   transaction of the -- I am saying -- business, goodwill for

18   Dr. Leveto to Center Corp. or to Jack Williams?

19          MR. WILLIAMS:   (Law Clerk)  Answer:  See

20   Exhibit 92.

21          THE COURT:  Okay.  And then the last one is:

22          Miss Iddon read the instructions on offshore

23   account limitations.  Do not believe that document was

24   submitted into evidence.  Can we get a copy of or a

25   re-reading of the exact text?


43


1          MR. WILLIAMS:  (Law Clerk)  The instructions

2   referred to in this question were not admitted into evidence,

3   period.

4          THE COURT:  Yes.

5          MR. WILLIAMS:  (Law Clerk)  I would just say, do

6   you think that they will come back with a question saying,

7   well, can we get a re-reading of the text?

8          THE COURT:  Well, let's cross that bridge when we

9   come to it.

10          MR. WILLIAMS:   (Law Clerk)  All right.  I'll type

11   that up.

12          THE COURT:  These become part of the record, the

13   originals of the question.

14          MR. MISKO:  Judge, I am curious, should you also

15   maybe instruct the jury that the only documents they are

16   going to be reviewing are the ones contained specifically

17   within the exhibit list?

18          That way, they don't come back and say, is this

19   exhibit -- do we have this?

20          MR. WILLIAMS:  (Law Clerk)  I would say these

21   questions sort of suggest that they know that, the fact that

22   they refer to the one --

23          THE COURT:  Let's wait.  I always hate to give them

24   more than they ask for.

25          MR. WILLIAMS:  (Law Clerk)  Because they say in

1    here, we do not believe this one was submitted into evidence.

2         MR. MISKO:  Okay.

3         MR. WILLIAMS:  (Law Clerk)  I double checked to

4    make sure they had the exhibit list.  And when I asked that

5    question, they said yes, and we are looking through it for

6    the answer to this question.

7         MR. LEVETO:  The answer really gives it to them.

8    The instructions referred to in that question were -- was not

9    admitted.

10        THE COURT:  And I also put it in my letterhead, the

11   jury was asked the following question, and then question and

12   answer.

13        MR. WILLIAMS:   (Law Clerk)  I think I have a jury

14   form.

15   (Court recessed at 11:50 a.m. in chambers.)

16   (Court reconvened in chambers at 1:10 p.m.)

17        THE COURT:  Did you give them the question?

18        MR. WILLIAMS:  (Law Clerk)  Yes, they have the

19   question.

20        THE COURT:  Okay.  There is no evidence, or what do

21  we say?

22      MR. WILLIAMS:  (Law Clerk)  Did you put the

23  question on the record?

24      THE COURT:  No, I didn't.

25      The question is:  Was the sale of Dr. Leveto's

45

1  business to Center Company ever finalized?  Question mark.

2  Document?  Question mark.  Timing?  Question mark.

3      MR. LEVETO:  Well, that's the agreement.  It's got

4  dates on it, but the copy is --

5      THE COURT:  Well, an agreement is not the same as a

6  closing.

7      MR. LEVETO:  Well, there is nothing more in

8  evidence, I don't believe.

9      MR. VORACEK:  The only thing there is, Your Honor,

10  is, at Exhibit 115 was a letter from Russell Schetroma to

11  Daniel Leveto which discussed the Center Company deal and

12  that it was not finalized as of sometime in 1992, I believe.

13      THE COURT:  Yeah.  Well, that was discussed in your

14  closing.

15        MR. VORACEK:  Yes.

16        MR. LEVETO:  The only thing is, that he wasn't the

17  one that did the final things on it, and that is in evidence.

18  But, this document and what wasn't with this document wasn't

19  on the premises.  Actually, it was sent away for some of the

20  intricacies of the closing and it wasn't there.  It wasn't

21  with these documents.

22        The thing that's here is the date of the document

23  memorializing the sale and the agreement, but that is all

24  there was.  Russell Schetroma was only half of the legal

25  counsel involved.


                           46


1        THE COURT:  Well, I guess the thing to say is, the

2  only document entered into evidence is the agreement of sale

3  previously referred to in that Exhibit 91, or whatever it

4  was.

5        MS. CALVIN:  92.

6        MR. WILLIAMS:  (Law Clerk) 92.  Do you want that?

7        MR. LEVETO:  I think that's correct.

8        MR. VORACEK:  The only document relating to the

9  sale or --

10          THE COURT:  Well --

11          MR. LEVETO:  The only document entered into

12  evidence.

13          THE COURT:  Well, I think you have to -- the only

14  document -- if you say relevant to the sale, then that letter

15  from Schetroma, or whatever his name is --

16          MR. VORACEK:  That was Exhibit 115 where Russell

17  Schetroma referred to the closing of the sale in a letter to

18  Daniel Leveto.

19          THE COURT:  But, he just said there wasn't a

20  closing --

21          MR. VORACEK:  Right.  That his office was at least

22  not aware of any closing.

23          MR. LEVETO:  That's why I don't think that should

24  be where -- that's leading.

25          MR. VORACEK:  I don't want to give the jury a false

47

1  impression that there are no other documents in evidence that

2  relate to the sale whatsoever other than document 92.  I

3  think that's misleading as well.

4          MR. LEVETO:  But, I don't believe it is misleading

5    to not point to an attorney that didn't do it.

6          THE COURT:  I would say -- I would say no closing

7    document was admitted into evidence.

8          MR. LEVETO:  I think that's correct.

9          THE COURT:  Any problem with that?

10         MS. CALVIN:  No.

11         MR. VORACEK:  No problem.

12         THE COURT:  Okay.  No closing document was entered

13   into evidence.  And do the same routine we did before.

14         MR. WILLIAMS:  (Law Clerk)  Okay.

15         MR. MISKO:  Judge, is there a timetable today?

16         THE COURT:  Well, what I usually do if I got a jury

17   that is out, I'll usually have Richard stick his head in

18   about quarter to five and say, how are you doing?  Are you

19   tired?  Do you want to go home?  What do you want to do?

20         I will be around here for today as long as it

21   takes.  Tomorrow, I got an appointment in Pittsburgh that I

22   can't avoid, but Judge McLaughlin has already agreed to take

23   the verdict.

24         MR. MISKO:  We just come back at nine?

25         THE COURT:  I guess nine, yes.

48

1  (Court recessed on Thursday, June 2, 2005, in chambers.

2  at 1:15 p.m.)

3

4                    * * * * *

5        I certify that the forgoing is a correct transcript

6  from the record of proceedings in the above-entitled matter.

7

8                         S/Michael D. Powers
                          Michael D. Powers
9                         Official Reporter

10     *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25