1      IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA

2

_____

3

UNITED STATES OF AMERICA

4
                        Plaintiff

5

       vs.          Criminal Action No. 01-06ERIE

6

DANIEL J. LEVETO

7
                        Defendant

8  _____

9

                   PROCEEDINGS

10

       Transcript of hearing commencing on Wednesday,
11  October 20, 2004, United States District Court, Erie,
    Pennsylvania, before Honorable Maurice B. Cohill, Jr.,
12  District Judge.

13  APPEARANCES:

14  For the Government:      For the Department of Justice
                        By:  Rita Calvin, Esq.
15                       By:  Thomas Voracek, Esq.

16  For the Defendant:      Pro Se
                        Stephen Misko, Esq.(Standby)
17                       (Via Telephone)

18

                   Reported by:
19                    Michael D. Powers, RMR
                    Official Court Reporter
20                     Room 5335 USPO & Courthouse

Pittsburgh, Pennsylvania 15219

21              (412) 208-7572

22

23   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
24

25


2


1              P R O C E E D I N G S

2   (Court convened on Wednesday, October 20, 2004,

3   at 11:00 a.m in chambers.)

4          THE COURT:  Mr. Misko.

5          MR. MISKO:  Yes.

6          THE COURT:  Okay.  I've got the phone a little

7   closer to the table now than when we tested it so maybe I am

8   going to ask everybody to keep their voices up so that

9   Mr. Misko in Pittsburgh can hear us.

10          Mr. Misko, for the record, is the attorney that I

11   appointed as standby counsel for Mr. Leveto.

12          We're scheduled for a hearing on suppression on

13   Monday, and I just wondered, you know, how everybody stands

14   on this thing because we are planning on going to trial on

15   Tuesday.

16         Is the government ready to go?

17         MR. VORACEK:  Your Honor, yes.  Thomas Voracek and

18   Rita Calvin appearing for the Department of Justice.

19         We are ready to proceed with the suppression

20   hearing on Monday, October 25th, and with the trial on

21   Tuesday, October 26th.

22         THE COURT:  How about you, Mr. Leveto?

23         MR. LEVETO:  Your Honor, I am certainly ready to

24   proceed with the suppression hearing on Monday.  And

25   depending on that, I will announce my intentions after that.

3

1   Okay?

2         THE COURT:  You mean as far as a possible plea

3   goes?

4         MR. LEVETO:  Yes.

5         THE COURT:  You are considering a plea, is that

6   right?

7         MR. LEVETO:  I'm considering a conditional plea,

8   yes.

9         THE COURT:  Okay.  Because we have got -- I mean,

10   if we are going to go to trial Tuesday, we have to alert

11   jurors, tell them to call in Monday night, or whenever they

12   call in Monday, whether they should report on Tuesday or not

13   for duty.

14        So, I am not trying to put any pressure on you at

15   all, but the sooner you can make up your mind on Monday, the

16   better.

17        MR. LEVETO:  Yes, sir.  I understand that.

18        THE COURT:  Now, you had also asked that the

19   government produce certain witnesses for the suppression

20   hearing, and you folks have seen that?

21        MR. VORACEK:  Your Honor, the motion was filed, I

22   believe, ex parte.  The government did receive one, I think,

23   probably by air from the Clerk's Office.

24        THE COURT:  I think my law clerk sent that to you.

25        MR. VORACEK:  But, we have reviewed that.

4

1        THE COURT:  Do you have any problems with having

2   any of these people there for the suppression hearing?

3        MR. VORACEK:  We will have Agent Lapina present.

4   The group manager, Tom Demko will be present.  The agent,

5   Richard Adams, will be present.

6          However, Mr. Leveto also requests a

7   Mr. Frank Falvo.  We may have difficulty obtaining his

8   presence.  He's an attorney with District Counsel's Office in

9   Pittsburgh, and he indicated to us that he does have Tax

10  Court on Monday.

11         Also, for the record, we note that Dr. Leveto has

12  requested that these witnesses bring documentation.  Some of

13  the documentation concerns summonses.  We have checked with

14  the agents.  They will attempt to procure that by Monday, but

15  they can't guarantee that they will have it all by then.

16  Some of it's been archived.

17         THE COURT:  I guess that is about the best we can

18  do from the sounds of it.

19         MR. LEVETO:  I don't understand on -- my ex parte

20  motion was not supposed to be privy to everyone so this kind

21  of shocks me.

22         MRS. DAVIS:  (Law Clerk) Judge, I did not send them

23  that.

24         THE COURT:  Oh.  Well, can't very well be ex parte

25  if they got to produce the witnesses.

5

1          MR. LEVETO:  Well, if they need to produce them, or

2  the Court, or however, see, I don't know how, with someone

3  like myself that cannot afford to do it myself, who produces

4  them.

5          I am of the opinion, or I was aware that the

6  ex parte motion meant that I was not giving anything to the

7  government regarding who my witnesses would be.

8          THE COURT:  Well, the appropriate way would have

9  been to ask to have it under seal.  If you had asked for it

10  under seal, then, you know, that would have alerted us not to

11  tell them.

12          But, as a matter of procedure in a suppression

13  hearing, even though the defendant is the one that's

14  supplying or moving for suppression, the normal procedure,

15  and it's been my experience all my legal career here, that

16  the government produces these people that are going to be

17  needed for the suppression hearing, and then they -- and they

18  even start by examining the witness and then the defendant

19  cross-examines that witness, but they are the kinds of

20  witnesses that you've got on your request for subpoena.

21       So, it shouldn't be any surprise to them whom you

22  wanted.

23       MR. LEVETO:  Absolutely.  I agree with that,

24  although Frank Falvo is a fairly important witness to me.

25       THE COURT:  Is he an attorney?


                              6


1        MR. VORACEK:  Yes, Your Honor.

2        THE COURT:  Is there any attorney-client problem

3   there?

4        MR. VORACEK:  Your Honor, I am not certain of the

5   answer to that.

6        And it's -- also from the Department of Justice's

7   point of view, we don't actually represent our employees, IRS

8   employees as individuals.

9        The other thing I would like to bring to the

10  Court's attention, however, is, we've already provided

11  Dr. Leveto with Jencks statements for Agent Lapina because we

12  intended to call him in the suppression hearing and two other

13  agents.  We have not provided him with any Jencks material

14  yet regarding Richard Adams or with any of the other two

15  witnesses.

16      We also note that some of the other documentation

17  that Dr. Leveto requests regarding the summonses, the

18  government doesn't feel that that's necessarily pertinent to

19  the suppression hearing.

20      But, however, if the Court would order us to have

21  that provided to Dr. Leveto, you know, so be it.

22      MR. LEVETO:  Could I give my position on that?

23      THE COURT:  Sure.

24      MR. LEVETO:  Yes.  The situation regarding --

25      THE COURT:  Excuse me.


                              7


1      Mr. Misko, can you hear everything all right?

2      MR. MISKO:  Yes, Your Honor.

3      THE COURT:  Okay.

4      MR. LEVETO:  I believe, Your Honor, the information

5  regarding summonses is absolutely critical here because, as I

6  will attempt to show and when I do show that with those, that

7  from day one we had an obvious Fourth Amendment violation.

8  The onus will then be on how everything is not tainted from

9    that point on, irregardless of the generality of the warrant,

10   irregardless of the other arguments that will be made.

11        So, that's why I feel that information is very

12   germane to what's happening here, as well as my notification

13   ability under 7602, I believe it is, of my accountant on the

14   day of the search and seizure.  These are very, very

15   pertinent issues when we think of suppression, not so much

16   exactly on the generality or the other points of the warrant,

17   but certainly a lot to do with, as is spoken of in

18   Alderman v. U.S., where one Fourth Amendment violation is

19   brought forth, the onus is then on the government to show how

20   everything is not tainted.

21        So, I believe the summonses --

22        THE COURT:  What are the summonses all about?  What

23   were the summonses for?

24        MR. LEVETO:  Well, the summonses on the day of the

25   search and seizure was to my accountant.

8

1        THE COURT:  For documents?

2        MR. LEVETO:  Yes.

3        THE COURT:  Okay.

file:///A|/LEV10-20.TXT

4          MR. LEVETO:  Yes.

5          THE COURT:  Okay.  And you want to see if the

6    search exceeded the perimeter of the warrant or what?

7          MR. LEVETO:  No.  With that, I just would like to

8    show, first of all, I wanted the proof of service to me of

9    that summons, which I believe did not exist.

10         So, my rights -- at that time, there is a violation

11   of rights there that I had no ability to quash the summons.

12   Notwithstanding the fact of the coexistence of criminal

13   process and civil process at exactly the same time, and one

14   of the most severe of criminal processes also.

15         So that, in itself, is a very large issue here,

16   very large issue.

17         THE COURT:  And the summons came from what, a

18   federal magistrate, or how does that work?

19         MR. VORACEK:  Your Honor, I have not seen the

20   summons.  The IRS ordinarily issues summonses when they are

21   involved in an administrative investigation for records.

22         THE COURT:  You mean they can do it on their own

23   like a subpoena?

24         MR. VORACEK:  Yes.  Correct, Your Honor.  Your

25  Honor, again, though I don't really see the pertinence to the

9

1   motion to suppress that was filed by Dr. Leveto with regard

2   to the summonses.

3       MR. LEVETO:  Both in my initial motion to suppress,

4   I included that information about the summonses, okay, as

5   outrageous conduct.  And in my response to your response, I

6   enumerated the statutory violations in so doing that and to

7   have the coexistence of criminal and civil process on the

8   same date that the search warrant was executed.

9       This summons was administered by one of the agents

10  and I don't know which one because, see, I never saw the

11  summons.  I never had the ability to quash it.  So, the

12  violation, both statutory as well as because 7209 and 7206

13  are very, very explicit about criminal investigations, good

14  faith, bad faith, and who is allowed to issue a third-party

15  summons.

16      So, we have statutory as well as constitutional

17  violations which absolutely play a part in this.

18      MR. VORACEK:  Your Honor, if I may respond

19  regarding procedure, at the time of the search warrant on

20  May 2nd, 1996, the Internal Revenue Service was still

21  conducting an administrative investigation of Dr. Leveto.  A

22  Title 26 grand jury had not yet been initiated.

23      Once a Title 26 grand jury begins, then the IRS is

24  no longer able to have summonses.  Then they go another route

25  to procure documentation.

10

1      THE COURT:  Through a judicial officer, or

2  something?

3      MR. VORACEK:  Yes.  Right.

4      MR. LEVETO:  Could I respond to that?

5      THE COURT:  Sure.

6      MR. LEVETO:  My position is that the coexistence of

7  both of those, I am not saying that a search and seizure is

8  equivalent of a Justice Department referral, but the Justice

9  Department referral is the spirit of what faith that

10  investigation and what route that investigation is taking.

11      That's by the wayside when you have the most severe

12  of adverse criminal process being executed.  It becomes

13  almost a non-event to even think about, is it criminal or is

14    it administrative?

15         MR. VORACEK:  At the time of the search and

16    seizure, it defies common sense for someone to say that it is

17    not a criminal investigation, and that's a very, very

18    significant issue here.

19         MS. CALVIN:  I would like to add one thing.

20         The Criminal Investigation Division, however, has

21    summonses power.  It is not only the civil arm of the IRS

22    that has summonses power.  Criminal Investigation has that up

23    to the point in which --

24         THE COURT:  Is a summons -- I mean, you will have

25    to excuse my ignorance, but I have not got into this

11

1    aspect -- I had tax cases before, but not this aspect of it.

2         Is a summons from the IRS, is that different from a

3    subpoena?

4         MR. VORACEK:  Yes.

5         THE COURT:  Or a search warrant?  Is that different

6    from a search warrant?

7         MR. VORACEK:  Yes, Your Honor.

8         THE COURT:  In other words, a summons, you are

9   telling the person to give me these papers, and a search

10  warrant, they can go in themselves and look for them.

11        Would that be the difference?

12        MR. VORACEK:  Yes.  And it is my understanding in

13  this case the summonses were issued to third-party record

14  custodian for records.

15        THE COURT:  Okay.

16        MS. CALVIN:  Well, the search warrant also requires

17  judicial review.

18        THE COURT:  Yes.  The search warrant, I would think

19  would.

20        MS. CALVIN:  Right.

21        MR. LEVETO:  And, of course, the summons also

22  requires notice to the third party in order to preserve their

23  rights to quash.

24        In other words, that's why the information cannot

25  be brought forth for twenty some days.  Okay?  That's why I

12

1   specifically asked for that notice to me because I did not

2   get it, and for good reason.

3          If we look in Title 26, 7609, we find that one

4   statute that authorizes the criminal investigator, or what

5   you might allege the criminal investigator, to administer or

6   execute summonses, you will find in one part that that whole

7   statute is good for everyone, in examination, and revenue

8   agents, but it does not apply to criminal investigators.

9          So, in other words, the authority to even

10  administer third-party summonses, if they are criminal

11  investigators as is alleged and is the law of this case now

12  under 7608(b), we know what we are talking about there, that

13  calls them criminal investigators, in that statute that

14  allows or gives any authority for third-party summons, we

15  will find that they are excluded as being authorized by that

16  statute to do it.

17          THE COURT:  Why do you need the summonses

18  themselves to make that argument?  I mean, I am sure they

19  will agree that there were --

20          MR. VORACEK:  Absolutely.  The government

21  stipulates that there were summonses issued.

22          THE COURT:  If it's a stipulation of fact, I don't

23  know why you need the summons itself.  That's all I am

24  saying.

25          MR. LEVETO:  What I would like to have is a listing


13


1   of the summonses and the date because I am not so sure that

2   that one that was done without my knowledge was the only one.

3          And, secondly, I really asked only for my

4   acknowledgement that I was served as the law requires with

5   that first summons.  Okay?  Because that first summons is

6   very important with this criminal and civil process on the

7   same date.

8          MR. VORACEK:  Your Honor, the government, if so

9   ordered by the Court, can make an attempt to obtain that.

10          THE COURT:  I would attempt it or otherwise just

11   get a declaration that the summons is not available, but that

12   the summons was be served on such and such a date, or

13   whatever happened, get some kind of an affidavit.

14          MR. LEVETO:  I know it was certainly served on

15   Mr. Scarpitti, my accountant.

16          THE COURT:  There is a lawyer here named Scarpitti,

17   too.  Is he related?

18          MR. LEVETO:  I don't really know, Your Honor.

19          THE COURT:  So, I mean, it would seem to me that

20  you can do that by stipulation of facts, you know, if he was

21  or wasn't served.  Then I would have to decide was that good

22  or bad.

23          MR. LEVETO:  Of course, the most important thing

24  is, was I noticed, I think, because I did find out that he

25  was served in April of 1997 was when I found it out.  Okay?


                              14


1  I mean, I didn't know that he was served at all.

2          MR. VORACEK:  If I may inquire, Your Honor, of

3  Dr. Leveto?  Are you specifically concerned with the summons

4  issued to Mr. Scarpitti?  Is that the only --

5          MR. LEVETO:  I'm specifically concerned with my

6  required notice of that summons.

7          MR. VORACEK:  Of that summons?

8          MR. LEVETO:  And I just wanted a list, okay?  And,

9  of course, 7602 says that anytime I really want a list, the

10  secretary will provide me with that anyway of all the

11  summonses.

12          So, I am not asking for anything unusual here.

13          THE COURT:  Again, if an accountant is served, can

14  his client move to quash the thing?

15       MR. LEVETO:  Yes.  An accountant is a third party

16  under 7603.  There is --

17       THE COURT:  There is no -- it is not like an

18  attorney-client relationship with an accountant.  I know

19  that.

20       MR. LEVETO:  No, it is not that.  And, of course,

21  this is the whole thing that makes civil process and criminal

22  process so much different, which brings us back to violations

23  which go from statutory also to constitutional when we look

24  at the coexistence, which these two things really can't

25  coexist in the same exact time period.  That's a very

15

1  important issue.

2       So, I just want the tools to bring that issue out.

3  The tools to bring that out are very important.

4       THE COURT:  Well, I would just ask the government

5  to do your best to get that stuff rounded up by Monday.

6       MR. VORACEK:  Yes, Your Honor.

7       MS. CALVIN:  Yes, we will.

8          THE COURT:  Can we do anything else today that you

9   can think of?

10          MR. VORACEK:  Your Honor, the government would just

11   like to put a couple things on the record concerning the

12   trial that's to begin on Tuesday.

13          We've already provided Dr. Leveto with all of the

14   Jencks material for the government's witnesses.  The

15   government anticipates calling about fifteen witnesses.

16   We'll have about four hundred exhibits.  Many of them are

17   voluminous documentation.

18          At the end of the government's case, we intend to

19   put a summary witness on the witness stand who will be

20   present during the trial who will provide summaries of the

21   voluminous documentation for the jury's understanding of the

22   case.

23          There is one aspect of Giglio that has not been

24   turned over to Dr. Leveto at this time.  We would ask the

25   Court to unseal Margaret Leveto's plea agreement so we may

16

1   turn that over to Dr. Leveto as part of Giglio information.

2          THE COURT:  We will direct that that be unsealed.

3   We will get that to you today, I imagine.

4          MR. VORACEK:  And we have also just received a copy

5   of Margaret Leveto's plea colloquy and we will turn that over

6   to Dr. Leveto immediately.

7          THE COURT:  Okay.  I guess we'll have to deliver --

8   well maybe -- why don't you get Rich to get that thing right

9   now, Kathleen?

10          MRS. DAVIS:  (Law Clerk)  Okay.

11          THE COURT:  Then we can give it to him before he

12   leaves.

13          MR. LEVETO:  Yes.  I had no idea there was going to

14   be any status conference, or anything, today or I may have

15   had other things.

16          THE COURT:  I didn't know there was going to be

17   either until we got this and I thought we better find out

18   about the people you want, and so forth.

19          I am just trying to think of anything else.

20          MR. LEVETO:  I have a question, Your Honor.  I

21   mean, it doesn't take a rocket scientist to see that, as I

22   sit here and we make plans for trial, I have to wonder if the

23   decision is not already made on my suppression motion.

24      THE COURT:  No.

25      MR. LEVETO:  But, regardless of that, I have to say

17

1   that if I would like to enter an agreement, okay, or if I

2   would like to change my plea, will I be able to, at that

3   time, like with an oral motion to the Court, do that without

4   being pressured into having to do anything at that time?

5       THE COURT:  Prior to trial?

6       MR. LEVETO:  Yes.

7       THE COURT:  I mean, it would seem to me that you

8   probably would not get credit -- you get usually a two-point

9   reduction for a plea in the guidelines, as opposed to going

10   to trial.  You get some credit for saving the government the

11   effort of going to trial.

12          Now, if you do it, you know, the way this thing is

13   working out, I certainly would give you the credit for the

14   two-point reduction if it were done before trial.  But, if we

15   have got our jury put together and ready to go and we're

16   paying them $40.00 a day for a hundred people to come in

17   here, and from which I suppose we need four alternates with

18   this long of a trial maybe, I don't know, but, anyway, the

19  government would be spending a lot of money after tomorrow if

20  there is going to be a trial.

21      MR. LEVETO:  Well, I have -- it's been no secret,

22  but evidently it's got to be official and on the record, I

23  will not go to trial with this case.  Okay?

24      My plea, though, that I would be looking at

25  changing my plea to, would be a conditional plea of nolo

18

1  contendere.

2      THE COURT:  I think I would accept that because

3  that avoids possible civil liability probably.

4      MR. LEVETO:  Well, in my world, the reason I'm

5  doing it is, it more closely matches myself and my integrity.

6  Okay?

7      THE COURT:  I would have to ask these folks -- give

8  these folks an opportunity to oppose that, if they were so

9  inclined, and maybe they have got to talk to people about it.

10      MR. VORACEK:  Your Honor, the Department of Justice

11  has a policy that the government opposes nolo contendere

12  pleas.

13          We've also been involved in plea negotiations,

14   though, with Dr. Leveto concerning a written plea agreement.

15   And maybe we just better put it on the record though that the

16   plea agreement, if one is -- if we are able to reach one,

17   let's say, Monday afternoon with Dr. Leveto, a plea agreement

18   would have to be approved by the Department of Justice

19   person, our bosses, and also probably by the U.S. Attorney.

20          Logistically, I don't think that that's possible to

21   do in one afternoon, on Monday afternoon, if the trial is

22   scheduled for Tuesday morning.

23          THE COURT:  As far as I am concerned, I mean, if

24   that -- in that case, it would result in postponing the,

25   quote, trial date.  It doesn't sound like we are going to

19

1   have a trial, as a practical matter.  It is going to screw up

2   my schedule considerably if there would be a trial later on.

3          I mean, my schedule got this thing cut out for

4   starting Tuesday and, you know, I am only up here every other

5   month and I've got a full docket for months ahead on this

6   thing.  And so I would be willing to postpone the thing

7   until -- assuming you would be able to get -- I would assume

8    you would be able to get permission to accept this

9    whatever --

10          MR. VORACEK:  Your Honor --

11          MR. LEVETO:  Your Honor, one other point.  I can

12   tell you now unequivocally that I will not be going to trial.

13          Now, rather, the plea agreement I enter into in my

14   change of plea is with the government, okay, or if it is an

15   open plea.  Okay.

16          THE COURT:  I am not sure what you mean by that.

17          MR. LEVETO:  Pleading without a deal.  Basically,

18   pleading -- you know, I thought it was called an open plea.

19   I could be wrong.

20          MR. VORACEK:  Your Honor, if I may inquire of

21   Dr. Leveto?

22          THE COURT:  Yes.

23          MR. VORACEK:  Are you considering to just pleading

24   guilty to the indictment or a nolo contendere to the

25   indictment?

20

1           MR. LEVETO:  Right.  Right.

2          MR. VORACEK:  A nolo contendere to the indictment?

3          MR. LEVETO:  Well, if I'm pleading, that's surely

4     what I am doing.  It's just that if I'm going to do it under

5     the tutelage of the government versus -- I can tell you that

6     there will be a change in plea and there will not be trial.

7          I think its important -- I think it's important

8     obviously for your knowledge, too, and I am not -- and I have

9     had this position for a while and it is not that I shared it

10    with the Court a lot, but I have had it here and there and

11    some reasons make me go to that, and we don't need to get

12    into those now, but I can at least say that and be absolutely

13    on the record for that.

14         THE COURT:  And I am going to have -- I would have

15    to think through, if they are opposing a nolo contendere

16    plea, and I am not sure whether nolo contendere would work.

17         I mean, the literal translation of nolo contendere

18    is, you know, I am not contesting the charge.  I am not

19    saying I am guilty or not guilty, but I am not going to

20    contest it.

21         But, I am not sure if you can have a conditional

22    nolo contendere plea.

23         MR. LEVETO:  By the rules, you can, Your Honor.

24          THE COURT:  You can?

25          MR. LEVETO:  Yes.  But, it may not apply to a

21

1   two-point reduction.

2          MR. VORACEK:  Rule 11(a)(2) reads:

3          A conditional plea.  With the consent of the Court

4   and the government, a defendant may enter a conditional plea

5   of guilty or nolo contendere.

6          THE COURT:  So, when they say permission, that

7   sounds like you have veto power.

8          MR. LEVETO:  I think the permission is along the

9   conditional plea line.  I think it is still up to the Court,

10   as far as guilty or nolo.  If you read the notes to Rule 11,

11   I think that sets that out because the government has to

12   agree that if this motion was found to be in my favor, that

13   it would dispose of the case.

14          THE COURT:  But, I don't think the rules even talk

15   about a conditional plea.  That's just something that have

16   been carved out of all the rules.

17          MR. VORACEK:  Yes, Your Honor, it is somewhat of a,

18    quote, odd situation.

19        I know that Courts obviously can accept a nolo

20    contendere plea over the government's objection by policy.

21        With regard to the conditional aspect, though, I

22    believe that the government will have to check with our

23    superiors on that precise issue.

24        THE COURT:  All right.  Well then, I think we ought

25    to plan on the other -- well, I mean, I am taking

22

1    Mr. Leveto -- Dr. Leveto -- I am sorry.  I don't mean to

2    demean the fact that you are a doctor.

3        MR. LEVETO:  That is okay, Your Honor.

4        THE COURT:  In view of the fact that his action --

5    he's told us that there is not going to be a trial, I'm -- I

6    would be willing to postpone the suppression thing a day or

7    two if that would help round it up.  I would rather get it

8    done on Monday, but if it would be helpful to postpone the

9    thing for a couple days, why, I could do that, too.

10        MR. VORACEK:  That's appropriate for the

11    government, Your Honor.  That would work.

12        THE COURT:  Why don't you get Rich to come in,

13  Kathleen, and we'll see what --

14      MRS. DAVIS:  (Law Clerk)  Okay.  He may be down --

15      THE COURT:  He's my scheduler.

16      MRS. DAVIS:  (Law Clerk)  I know we are here on

17  Tuesday and Wednesday for other suppression hearings.

18      THE COURT:  We are on the --

19      MS. CALVIN:  While he is checking, even though we

20  did have representations from Dr. Leveto that he did intend

21  to plead, the government had an obligation to continue with

22  preparation, and so I have with me the government's requested

23  charge, as well as the proposed voir dire questions.

24      I have a copy for Dr. Leveto, as well, and I would

25  like to put on the record that we also have the plea colloquy


                                23


1  from Mrs. Leveto's plea, as well, as she provided testimony

2  at a civil hearing which has been provided to us, and I would

3  like to provide those to Dr. Leveto at this time.

4      MR. LEVETO:  Was that August 13th, the civil

5  hearing?  Is that the one that you are talking about?

6  2001 -- 2004.  It was very recent.

7        MS. CALVIN:  2004.  It was very recent.  In fact,

8   my copy doesn't have a date on it, but I -- September 24th.

9        MR. LEVETO:  Okay.

10        MS. CALVIN:  And I would like to present these to

11   Dr. Leveto at this time.  I don't know if he's allowed to

12   have them.

13        THE MARSHAL:  I will take care of that later.

14        MS. CALVIN:  And I have the originals for the Court

15   of the voir dire and the requested charge.

16        THE COURT:  Yes.

17        MS. CALVIN:  I have a copy for defense counsel --

18   standby counsel, which I will put in the mail.

19        THE COURT:  Oh, okay.  This is the plea letter that

20   Rich just brought in that was under seal and I'm presenting

21   that to you.  That's a letter addressed to Mr. Mead, one of

22   our Assistant U.S. Attorney's.  I don't know who presented

23   it.

24        MR. VORACEK:  Your Honor, I believe Mr. Mead, at

25   that time, was representing Margaret Leveto.

24

1        THE COURT:  Oh, okay.  Mr. Mead used to be an

2   Assistant U.S. Attorney, yes.

3        Now, Rich -- I think you can go off the record.

4   (Off the record discussion.)

5        THE COURT:  Okay.  Well, then we'll, based on our

6   conversation off the record, we'll say that the suppression

7   hearing will be scheduled for 9:30 on Thursday, whatever that

8   date is.  I guess the twenty-eighth.

9        MR. VORACEK:  Yes, Your Honor.

10       MR. WITAS:  (Judge's Clerk)  Judge, I am looking at

11   the book right now.  I don't know if this will have

12   anything -- but there is a Judge's meeting at the ACBA

13   litigation, lunch, Duquesne Club.  Does that ring a bell?

14       THE COURT:  I don't need to go to that.

15       MR. LEVETO:  How about Mr. Misko?

16       THE COURT:  Mr. Misko?

17       MR. MISKO:  Yes, Your Honor.

18       THE COURT:  How are you for next Thursday, a week

19   from tomorrow?

20       MR. MISKO:  Actually, I had something that day, but

21   I am not going to -- I can rearrange it.

22       THE COURT:  I'm appreciate that, if you can.

23          MR. MISKO:  Yes, sir:

24          MR. WITAS:  (Judge's Clerk)  That will be the

25   twenty-eighth.


25


1          THE COURT:  The twenty-eighth at nine-thirty.

2   Okay.

3          Do we have any other business to conduct today?

4          Does he have everything now that he has asked for,

5   that we can provide the stuff that was under seal and

6   anything else?

7          MR. VORACEK:  Your Honor, will there be another

8   setting of a trial date or will that just be delayed?

9          THE COURT:  I am taking Dr. Leveto at his word that

10   there will not be a trial.

11          MR. LEVETO:  You can absolutely do that, Your

12   Honor.

13          MR. VORACEK:  So, the government will not have

14   their witnesses for trial right after the suppression

15   hearing?

16          THE COURT:  Right.

17          MR. VORACEK:  Very good.  Thank you.

file:///A|/LEV10-20.TXT

18          MR. LEVETO:  You won't need them anyway.  That is

19   fine.  Thank you.

20          THE COURT:  All right.  Well, thanks very much.  It

21   sounds like we'll get this thing resolved then, one way or

22   another, in the near future.

23          MR. VORACEK:  Yes, Your Honor.

24          MR. LEVETO:  Yes, Your Honor.  Thank you.

25          MS. CALVIN:  Thank you, Your Honor.


                                  26


1           THE COURT:  Okay.  Steve, thank you very much.

2           MR. MISKO:  Okay, Judge.  Take care.  We'll see you

3    next week.

4           THE COURT:  Okay.

5    (Court adjourned on Wednesday, October 20, 2004,

6    at 11:35 a.m. in chambers.)

7

8                       * * * * *

9           I certify that the forgoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12                          S/Michael D. Powers
                            Michael D. Powers
13                          Official Reporter

14        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

15

16

17

18

19

20

21

22

23

24

25